IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO – EASTERN DIVISION

| | |
|---|---|
| NORMAN NOBLE, INC.<br>5507 Avion Park Drive<br>Highland Heights, OH 44143<br><br>Plaintiff,<br><br>v.<br><br>BLACKSTONE ULTRASONICS, INC.<br>(Formerly known as Blackstone-Ney Ultrasonics, Inc.)<br>9 North Main Street<br>Jamestown, NY 14701<br><br>Defendant. | CIVIL ACTION NO.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Norman Noble, Inc., as and for its Complaint against Defendant, Blackstone Ultrasonics, Inc., formerly known as Blackstone-Ney Ultrasonics, Inc., states as follows:

## PARTIES

1. Plaintiff, Norman Noble, Inc. ("Norman Noble"), is an Ohio corporation with its principal place of business located at 5507 Avion Park Drive, Highland Heights, Ohio 44143.

2. At all relevant times, Norman Noble was in the business of providing micro-precision manufacturing of medical implants and devices to its customers from its manufacturing facility in Ohio.

3. Defendant, Blackstone Ultrasonics, Inc. f/k/a Blackstone-NEY Ultrasonics, Inc. ("Blackstone") is a New York corporation with its principal place of business located at 9 North Main Street, Jamestown, New York 14701.

4. At all relevant times, Blackstone was engaged in the manufacture, marketing and sale of ultrasonic equipment and technologies for use in medical, industrial and other applications.

## JURISDICTION AND VENUE

5. Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. §1332 as the matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000) Dollars and the parties are deemed citizens of different states.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 as the Plaintiff is located in this judicial district and the acts that gave rise to this claim took place in this judicial district.

## FACTUAL BACKGROUND

7. Norman Noble is the manufacturer of micro precision of medical implants and devices.

8. In or about 2008, Norman Noble purchased certain equipment to use in a passivation line for its manufacturing processes from Defendant Blackstone. The equipment purchased was an Aquarius Ultrasonic Cleaning System – Pickling and related equipment ("Pickling Equipment") which included washing tanks and heaters. The total purchase price was $548,924 for the equipment.

9. Norman Noble also entered into field service inspection contracts with Defendant Blackstone for quarterly inspections of the Pickling Equipment purchased from Defendant Blackstone. An order was placed in or about February or March of 2015 for quarterly field service inspections of the Pickling Equipment in the year 2015.

10. On or about July 4, 2015, Norman Noble suffered a fire at its facility in Highland Heights, Ohio that caused fire, smoke, and water damage to its equipment and caused an interruption in its business, which necessitated emergency expenses and repairs.

11. The fire and resulting damage originated in the Pickling Equipment designed, manufactured, sold, and serviced by Defendant Blackstone.

12. In particular, the Pickling Equipment designed, manufactured, sold and serviced by Defendant Blackstone had a heating component that malfunctioned and was allowed to get into a runaway heat condition that eventually ignited surrounding combustibles that led to the damages suffered by Norman Noble.

13. The total damages suffered by Norman Noble as a result of the fire, smoke, and water damage was $3,724,516.74.

## COUNT I
## STRICT PRODUCTS LIABIITY UNDER R.C. §2307.72, *ET SEQ.*

14. Plaintiff incorporates the previous paragraphs as if set forth at length.

15. Defendant Blackstone engineered, developed, designed, manufactured, fabricated, tested, inspected, supplied, distributed, sold, and serviced the Pickling Equipment in a defective condition thereby rendering the equipment unreasonably dangerous to persons and property, including the property of Norman Noble.

16. The subject Pickling Equipment was expected to and did reach its intended consumer without substantial change and remained in substantially the same condition, without any material alterations or misuse from the time it was sold, distributed, and supplied until the date of the fire on July 4, 2015. In addition, Defendant Blackstone was responsible for quarterly inspections of the Pickling Equipment.

17. The Pickling Equipment was defective in manufacture or design in that it deviated in a material way from its manufacturing performance standards and/or deviated in a

material way from otherwise identical Pickling Equipment manufactured, engineered, developed, fabricated, tested, inspected, supplied, distributed, sold and serviced by Defendant Blackstone.

18. The Pickling Equipment was defective in design and/or manufacture in that when it left the hands of Defendant Blackstone, the foreseeable risks exceeded the benefits associated with the design and manufacture and/or the design and manufacture was more dangerous than would be expected by Plaintiff when used in an intended and reasonably foreseeable manner. In addition, Defendant Blackstone serviced the Pickling Equipment.

19. For the foregoing reasons, Defendant Blackstone is liable to the Plaintiff pursuant to the doctrine of strict liability as set forth in Ohio Rev. Code §2307.71, *et seq.* and the Restatement (Second) of Torts, Section 402A

20. As a direct and proximate result of the aforesaid violation of the Ohio Product Liability Act by Defendant Blackstone, Plaintiff Norman Noble sustained the damages to its facility in an amount in excess of $3.7 million, exclusive of interest and costs, for which Defendant is legally liable.

WHEREFORE, Plaintiff, Norman Noble, demands judgment against Defendant Blackstone in an amount in excess of $75,000, together with interest, the costs of this action, and such other and further relief as the Court may award.

## COUNT TWO
## NEGLIGENCE

21. Plaintiff incorporates the previous paragraphs as if set forth at length.

22. Defendant Blackstone owed a duty of care to Plaintiff to engineer, develop, design, manufacture, fabricate, test, inspect, supply, distribute, sell, and service the Pickling Equipment that was delivered to Plaintiff in or about 2008 and which it serviced thereafter up until the time of the fire.

23. Defendant Blackstone's negligence consisted of its failure to engineer, develop, design, manufacture, fabricate, test, inspect, supply, distribute, sell, and service its product reasonably such that the heater in one of the tanks of the Pickling equipment would automatically shut down before becoming involved in a runaway heat condition that led to the fire of July 4, 2015.

24. The negligence of Defendant Blackstone as set forth above proximately caused the damages suffered by Plaintiff in an amount in excess of $3.7 million.

WHEREFORE, Plaintiff, Norman Noble, demands judgment against Defendant Blackstone in an amount in excess of $75.000, together with interest, the costs of this action, and such other and further relief as the Court may award.

## COUNT THREE
### BREACH OF CONTRACT AND WARRANTY

25. Plaintiff incorporates the previous paragraphs as if set forth at length.

26. In or about 2008, Plaintiff purchased an Aquarius Ultrasonic Cleaning System – Pickling and related equipment for the total amount of $548,924.

27. Thereafter, Plaintiff Norman Noble also purchased from Defendant Quarterly Inspection Services for the products purchased from Defendant.

28. Defendant Blackstone impliedly and expressly warranted that the AQ Pickling System and related equipment that it sold to Plaintiff were fit for use in Plaintiff's manufacturing business of micro precision medical equipment and were also fit for the particular purpose for use in that business.

29. Defendant also impliedly and expressly warranted that its quarterly inspection services would be performed competently and that any defects or other problems with Defendant's Pickling Equipment would be identified and addressed.

5

30. Defendant breached both its contract to provide equipment that would perform as warranted (expressly and impliedly) and with respect to its quarterly service inspections.

31. As a result of the above-described breaches of contract and warranty, Defendant's Pickling Equipment overheated causing the fire of July 4 and damages suffered by Plaintiff as described above.

WHEREFORE, Plaintiff, Norman Noble, demands judgment against Defendant Blackstone in an amount in excess of $75.000, together with interest, the costs of this action, and such other and further relief as the Court may award.

Dated: 6/29/2017

Respectfully submitted,

/s/ Andrew Avellano
Andrew P. Avellano, Esquire (0062907)
Andrew P. Avellano, LLC
4181 E. Main Street
Columbus, OH  43212
(614) 237-8050
(614) 237-3505 Fax
andy@drewavo.com

Mark E. Utke, Esquire (0088559)
Mark T. Mullen, Esquire
Cozen O'Connor, P.C.
One Liberty Place – Suite 2800
1650 Market Street
Philadelphia, PA 19103
(215) 665-2000
(215) 665-2013 Fax
mutke@cozen.com
mmullen@cozen.com

Attorneys for Plaintiff
Norman Noble, Inc.